UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA REDFERN,<br><br>    Plaintiff,<br><br>    v.<br><br>HOME DEPOT U.S.A. INC.,<br><br>    Defendant. | Case No. 17-cv-01944-EMC<br><br>**ORDER RE JOINT DISCOVERY LETTER**<br><br>Docket No. 26-3 |

The parties disagree whether Defendant is entitled to medical records pertaining to three doctor's visits. For the reasons below, the Court concludes Defendant is entitled to some, but not all, of the information in the records. The parties are ordered to meet-and-confer further in compliance with this order.

## I.    FACTUAL BACKGROUND

Plaintiff alleges that Home Depot discriminated against her on the basis of a disabling medical condition, multiple sclerosis. She alleges that she disclosed her condition to Defendant in August 2013; that the condition limits her major life activities like walking, standing, and working for extended periods of time; and that she requested a reasonable accommodation of working limited hours to avoid exacerbating her condition. Compl. ¶ 14. Defendant allegedly did not respond to her August 2013 request or attempt to engage in a good faith interactive process under California law, *id.*¶ 15, but she was transferred to another department in November 2014 where she was provided a reasonable accommodation and modified schedule as requested, *id.* ¶ 16.

Plaintiff alleges that her condition worsened in February 2016, prompting her to make a second request for reasonable accommodation limiting the number of hours she worked. *Id.* ¶ 17. Her request was "temporarily approved." *Id.* Shortly thereafter, she notified her new supervisor,

Tammy Zigenis, of the approved request for accommodation. *Id.* ¶ 19. Zigenis allegedly began to make discriminatory remarks to Plaintiff about her disability. *Id.* ¶ 20. Plaintiff attempted to complain about Zigenis to Assistant Manager Ricardo Diaz on three occasions between February and April 2016, but he discouraged her from making an official complaint to Human Resources. *Id.* ¶¶ 21-22.

In April 2016, Defendant terminated Plaintiff. *Id.* ¶ 23. Plaintiff alleges she was terminated on the basis of her disability and in retaliation for her request for an accommodation and her complaints about Zigenis's alleged comments. *Id.* She alleges that these actions caused her to suffer "special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial," *id.* ¶¶ 30, 36, 42, and "general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial," *id.* ¶¶ 31, 37, 43.

## II.   PROCEDURAL BACKGROUND AND SUMMARY OF DISPUTE

This discovery dispute concerns whether Defendant must return medical records pertaining to three doctor's visits during Plaintiff's employment. Defendant subpoenaed the records from Plaintiff's physicians on July 3, 2017. Plaintiff objected, but did not move for a protective order until the subpoena's date of production, July 28, 2017. *See* Docket No. 22. Upon review, the Court ruled that "the subject subpoenas may be enforced to the extent they directly relate to: (1) the diagnosis, symptoms, care and treatment of Plaintiff's disability during the time of her employment with Defendant, and (2) the diagnosis, symptoms, care and treatment of any medical condition purportedly caused by Defendant's conduct which is the subject of this lawsuit." Docket No. 24.

However, it appears that the third parties apparently produced records in response to Defendant's subpoenas either before or on the same date that Plaintiff's motion was filed. Through meet and confer, Defendant has agreed to return or destroy approximately half of those records. *See* Docket No. 26-3 at 1. The parties are unable to agree whether three documents consisting of approximately 22 pages regarding the three doctor's visits fall within the scope of the

2

Court's prior order. Each document is analyzed below.[1]

### III. DISCUSSION

A. Legal Standard

Plaintiff demands the three documents regarding three medical appointments be returned or destroyed on the basis that they are privileged medical records. Fed. R. Civ. P. 45(e)(2)(B). Plaintiff's claims are brought under California law, so state law on privilege governs. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Under California law, confidential communications between a patient and physician are privileged, "including information obtained by an examination of the patient" and "a diagnosis made and the advice given by the physician." Cal. Evid. Code § 992; *see also* Cal. Evid. Code § 994. Additionally, California law recognizes that patients have a constitutional right of privacy in their medical records. *See* Cal. Const. art. I, § 1. The constitutional right of privacy in such records is "broader" than the statutory privilege. *Davis v. Super Ct.*, 7 Cal.App.4th 1008, 1013 (1992).

Both the constitutional protection and the statutory privilege are waivable, and both for similar reasons. The statutory privilege is waived for "a communication relevant to an issue concerning the condition of the patient if such issue has been tendered" by the patient in litigation. Cal. Evid. Code § 996(a). Similarly, "[a]n implicit waiver of a party's constitutional rights encompasses only discovery *directly relevant* to the plaintiff's claim and essential to the fair resolution of the lawsuit." *Davis*, 7 Cal.App.4th at 1014 (emphasis in original). Such waivers

---

[1] Plaintiff argues that Defendant acted in bad faith by inquiring about the status of production with the third-parties despite being aware of Plaintiff's objections to the subpoenas. Plaintiff does not suggest that Defendant had agreed to suspend the production date pending Plaintiff's anticipated motion to quash, or present any evidence to support its speculation that Defendant misinformed the third-parties that the dispute had been resolved. In the absence of any misrepresentations, there is no indication that Defendant acted in bad faith. The discovery rules are clear: a third-party must comply with the subpoena unless it itself serves objections, or a party has filed a motion to quash. *See*, *e.g.*, *Internmatch, Inc. v. Nextbigthing, LLC*, No. 14-cv-05438-JST, 2016 WL 1212626, at *2 (N.D. Cal. Mar. 28, 2016) ("[A] party objecting to a subpoena must file a motion to quash the subpoena before . . . the actual date of production of the requested documents, as is required by the Federal Rules." (citation and quotation omitted)). Plaintiff acted at her peril by waiting until the date of production to file the joint discovery letter without securing any agreement to stay the subpoena from Defendant.

3

"must be narrowly, rather than expansively construed, so that plaintiffs will not be undeterred form instituting lawsuits by fear of exposure of private activities." *Id.* For that reason, "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." *Id.* Any disclosure "must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." *Id.*

California courts apply a high threshold to determine whether a patient's confidential medical records have been placed "in issue." For example, in *In re Lifschutz*, 2 Cal.3d 415 (1970), the California Supreme Court considered when waiver of the analogous psychotherapist-patient privilege occurs. It rejected the notion that "complete waiver of privilege [occurs] whenever a patient institutes a claim for any physical or mental injury," noting that "the [litigation] exception has been generally applied only to compel disclosure of medical treatment and communication concerning the very injury or impairment that was the subject matter of the litigation." *Id.* at 434. It explained that "disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has 'disclose[d] . . . by bringing an action in which *they* are in issue,'" but that "communications which are not directly relevant to those specific conditions do not fall" within the waiver. *Id.* at 435 (emphasis in original). Thus, "[d]isclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be 'relevant' to the substantive issues of litigation." *Id.*

In *Lifschutz*, the California Supreme Court specifically addressed the situation where a plaintiff makes "typical allegations of 'mental and emotional distress' . . . [but] does not specifically identify the nature of the 'mental or emotional condition' at issue." *Id.* at 436. Such general allegations "neither disclose [plaintiff's] entire medical history of treatment for mental or emotional conditions nor realistically waive[] [plaintiff's] interest in maintaining the confidentiality of that treatment." *Id.* They create only "the possibility" that some feature of the medical history will be directly relevant. Where only the *possibility* exists, the general allegation is not sufficient for the court to determine whether the emotional distress alleged "is merely the

4

'normal' distress experienced as a result of [the allegedly injurious act]" (*i.e.*, garden-variety), or "whether it includes unusual or particularly serious elements upon which prior [medical] history may be directly relevant." *Id.* For that reason, a plaintiff who makes only such general allegations must explain, once the issue arises, why a given communication is not directly relevant by, for example, "delimit[ing] his claimed 'mental or emotional distress.'" *Id.* at 436-37.

Similarly, in *Davis*, plaintiff filed a personal injury action alleging that, as a result of an automobile accident, she suffered "pain and suffering." *Id.* at 1015. The *Davis* court recognized that "pain and suffering" often includes "a range of emotional injuries" such as "fright, nervousness, grief, anxiety, worry mortification, shock, humiliation, indignity, embarrassment, apprehension, terror and ordeal." *Id.* at 1016. Nevertheless, the court determined that, to find a waiver, "the materials sought must be directly relevant to the issue of pain and suffering associated with the physical injuries petitioner sustained." *Id.* at 1017. It is not enough that "in the records requested there could be material which might be relevant to various issues in the action, such as the nature and extent of emotional distress suffered, causation of the accident and petitioner's condition at the time of the accident." *Id.* Rather, the waiver must be limited to "specific matters directly relevant to petitioner's pain and suffering from the physical injuries." *Id.* at 1018. There is no waiver where "the records do not concern treatment for the injuries for which [plaintiff] claims damages." *Id.* In other words, that a defendant could use the records to show other causal factors for the alleged pain and suffering is, standing alone, not enough to find a waiver.

Similarly, in *Roberts v. Sup. Ct.*, 9 Cal.3d 330 (1973), plaintiff filed a personal injury action based on an automobile accident she alleged left her "sick, sore, lame, and disabled." *Id.* at 333. The plaintiff also alleged that she began to suffer back pain after the accident. The defendant subpoenaed records of a hospitalization for overdose that plaintiff had disclosed in discovery, arguing that her back pain might have been related to the overdose, not the accident. Although the court noted that the defendant could "pursu[e] that issue further and attempt[] to prove that [plaintiff's] back problems existed prior to her collision," without more, the speculative link "d[id] not make it reasonably probable that the [protected communications] sought . . . [were] directly relevant to a specific mental condition voluntarily placed at issue in the litigation by petitioner."

5

*Id.* at 339. It therefore did not find a waiver of privilege or permit access to the records.

B. <u>Application</u>

Here, as in *Lifschutz*, Plaintiff's complaint makes only general allegations about physical and emotional pain and injury. *See* Compl. ¶ 24 (plaintiff was "shocked and humiliated by Defendants' discriminatory and retaliatory conduct"); *id.* ¶¶ 31, 37, 43 (alleging "general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial"). Therefore, as in *Lifschutz*, it is not clear from the record what particular physical or emotional injuries have been placed at issue. To support her claim of privilege, Plaintiff must come forward with some explanation either delimiting her claim of physical and emotional injury or otherwise explaining why the records are not directly relevant.

In the joint discovery letter, Plaintiff clarifies that she "is not claiming emotional distress beyond those which are 'garden variety' in nature." Docket No. 26-3 at 2. Garden-variety emotional distress is "ordinary or commonplace" and "simple or usual" as opposed to "complex, such as [emotional distress] resulting in a specific psychiatric disorder." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003). It is analogous to what the California Supreme Court described as "the 'normal' distress experienced as a result of [an injurious act]" rather than "unusual or particularly serious elements upon which prior [medical] history may be directly relevant." *Lifschutz*, 2 Cal.3d at 436. To the extent that Plaintiff has limited her claim of emotional injury to garden variety, the medical records here are not "directly relevant" to any medical condition that she has placed in issue, unless she claims to have sought treatment for emotional injuries caused by Defendant.

The record is not clear, however, about the type of "physical distress and injury" Plaintiff alleges she has suffered. Thus, under *Lifschutz*, it is not clear what medical conditions have been placed specifically or directly in issue, nor which of the records submitted are "directly relevant" to those conditions. Each of the disputed documents is discussed below; the parties shall proceed with discovery based on the following guidance.

1. Exhibit A – August 20, 2015 Medical Appointment

Plaintiff contends that Defendant must return this record because the purpose of the visit was to treat another unrelated medical condition.[2] Plaintiff is generally correct that the record falls outside the scope of the Court's previous order, but the record does mention, albeit in passing, information about "the diagnosis, symptoms, care and treatment of Plaintiff's disability during the time of her employment." Docket No. 24. In particular, the record confirms her multiple sclerosis diagnosis (*see, e.g.,* BATES 000021, 000022, 000040). The record therefore shall be produced only to the extent necessary to identify the diagnosis of multiple sclerosis, treatment for that diagnosis, and, relatedly, the date of the doctor's visit and the identity of the doctor, consistent with the Court's prior order. Unless the remaining notes relate specifically to the "diagnosis, symptoms, care, and treatment" of her multiple sclerosis condition, they should be redacted and destroyed.

Defendant argues that other information in the records is relevant to Plaintiff's claim she suffered emotional distress, but, as explained above, in light of Plaintiff's limitation to garden variety emotional distress, that alone is not sufficient to show that this document is "directly" relevant or "essential" to fair litigation of the suit. *Davis*, 7 Cal.App.4th at 1014. Moreover, there is no indication Plaintiff intends to rely on any part of the document as proof of emotional distress caused by Defendant. Accordingly, Defendant is not entitled to the other medical information in the document "merely upon the speculation that there may be a 'connection' between the patient's past [medical] treatment and some 'mental component' of [her] present injury." *Roberts*, 9 Cal.3d at 339.

2. Exhibit B – January 11, 2016 Medical Appointment

Plaintiff contends the purpose of this visit, too, was related to another unrelated condition. Defendant counters that the record mentions her multiple sclerosis diagnosis on pages 33 and 38. As above, to the extent necessary to identify the multiple sclerosis diagnosis and treatment for the diagnosis, the date of the doctor's visit, and the identity of the doctor, this record should be

---

[2] The Court refers to certain contents of the documents only indirectly in this order because it is private and unrelated medical information.

7

1  produced. In addition, the narrative portion of the record which discusses pain experienced by
2  Plaintiff at work should be produced. *See* BATES 000037 (last paragraph).

3  However, the Court cannot determine whether the remainder of the record describing her
4  symptoms is "directly relevant" to a medical condition she has placed "at issue." Plaintiff
5  generally alleges "physical distress and injury," Compl. ¶¶ 31, 37, 43, so it is possible that the
6  information regarding the pain symptoms alleged is relevant to her allegations, particularly since it
7  occurs in January 2016, around the time she alleges that her condition worsened. Thus, to
8  maintain privilege over other portions of this document, Plaintiff must establish that the condition
9  discussed is not "in issue" by delimiting her alleged physical distress and injury (e.g.., by
10 disclaiming the specific type of physical pain described in this record as part of the pain caused by
11 Defendant). If she does not, then Defendant is entitled to the remainder of the record. The parties
12 shall meet-and-confer based on this guidance.

    3.  Exhibit C – April 4, 2013 Office Visit

14 Plaintiff also argues this visit was not related to her multiple sclerosis condition. Plaintiff
15 characterizes this document as relating to a private and irrelevant medical condition. However, the
16 visit principally relates to a motor vehicle accident, physical symptoms she experienced in the
17 aftermath, and the possibility of a multiple sclerosis flare. BATES 000047. Although this visit
18 occurred in April 2013, before the alleged conduct in this case, Plaintiff alleges that as early as
19 August 2013, Defendant's conduct began to have "negative effects to her disability." Compl. ¶
20 15.

21 As above, to the extent necessary to identify the multiple sclerosis diagnosis and treatment
22 for the diagnosis, the date of the doctor's visit, and the identity of the doctor, this record should be
23 produced. With respect to the remainder of the document, the Court cannot determine whether the
24 medical information has been placed "at issue" because it is unclear what type of "negative effects
25 to her disability" or "physical distress and injury" Plaintiff alleges that Defendant has caused. To
26 preserve her privilege, then, Plaintiff must clarify her allegations. If she does not, or if her
27 allegations include the type of pain discussed in BATES 00047, then Defendant is entitled to
28 information in the record. The parties shall meet-and-confer based on this guidance.

## IV. CONCLUSION

Defendant is entitled to the records to the extent necessary to identify the diagnosis of multiple sclerosis, treatment for the diagnosis, the date of the doctor's visit, and the identity of the doctor, consistent with the Court's prior order. In light of Plaintiff's limitation to garden variety emotional distress, Defendant is not entitled to records regarding possible emotional symptoms of Plaintiff's other medical conditions. Defendant is only entitled to records regarding physical pain and injury to the extent that it relates to the same type of physical pain and injury that Plaintiff alleges was caused by Defendant's conduct. The parties shall meet-and-confer to apply this guidance to the disputed records. Defendant shall redact or destroy portions of the record to which it is not entitled, consistent with this order.

This order disposes of Docket No. 26-3.

**IT IS SO ORDERED**.

Dated: November 16, 2017

_____
EDWARD M. CHEN
United States District Judge